**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nancy L Knight, | No. CV-25-08079-PCT-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| County of Mohave, et al., | |
| Defendants. | |

On April 15, 2025, *pro se* Plaintiff Nancy L. Knight ("Plaintiff") filed a Complaint against multiple Defendants alleging various violations of her constitutional rights. (Doc. 1). On May 12, 2025, she filed a First Amended Complaint (Doc. 12), and on May 21, 2025, and again on June 23, 2025, sought leave to amend her First Amended Complaint (Docs. 14 & 29).[1] On July 23, 2025, Defendants County of Mohave, Steven C. Moss, Ryan Esplin, Jeffrey Haws, and Christine Ballard (collectively, "County Defendants") moved to dismiss the First Amended Complaint. (Doc. 40). The same day, Defendants Dale P. Nielson, Lee Jantzen, Derek Carlisle, John Napper, and Steven C. Moss (collectively, "State Defendants") also sought dismissal of the First Amended Complaint. (Doc. 42). Plaintiff filed a Response (Doc. 47) to County Defendants' Motion to Dismiss that is construed as a response to State Defendants' Motion as well, given that the Response references State Defendants' Motion. (*See* id. at 2–3). State and County Defendants have each filed a Reply. (Docs. 48 & 49).

---

[1] All of these motions have been fully briefed. (*See* Docs. 19, 20, 21; 33, 36, 37).

1  Because the Motions to Dismiss raise jurisdictional issues, the Court will address
2  them first.

3  **I.     The FAC's Allegations**

4  Plaintiff's FAC is not a model of clarity, but from what can be discerned, Plaintiff's
5  claims arise from grievances with various state court proceedings. Plaintiff's state court
6  cases originate from zoning decisions that were made about her property and the properties
7  of other nearby landowners. (*See* Doc. 12 at ¶¶ 17–25). Based on the alleged zoning and
8  permitting issues, Plaintiff filed several civil actions in state court, including "CV 2025-
9  00044" and "CV 2018-04003." (*Id.* at ¶¶ 13, 26). Plaintiff claims that her First, Fifth, and
10 Fourteenth Amendment rights were violated during these proceedings and that she faced
11 discrimination. (*Id.* at 3). The FAC alleges that various actors engaged in improper
12 behavior throughout her state court cases. (*See generally id.* at ¶¶ 24–50). Specifically,
13 Plaintiff alleges:

- Defendant Judge Lee Jantzen "violated Plaintiff's first amendment right to free speech by imposing a Gag Order;" "denied Plaintiff's Motion for equal treatment;" "declared Plaintiff a Vexatious Litigant for filing a Rule 60 Motion in her attempt to reverse Judge Carlisle's award of attorney fees;" "failed to follow case law for the movant on abandonment to join Rule 19 parties;" "filed his Rule 19 order as a Rule 54 (b);" "denied Plaintiff's dispositive motion on the abandonment claim;" "recused himself after Plaintiff filed a Rule 42.2 Affidavit of eight counts of bias;" and "never provided Plaintiff with a signed Notice to Property Owners for inclusion in the Service Packet" (*id.* at ¶¶ 13, 16, 32–35, 41);

- Defendant Judge Dale Nielson "violated Plaintiff's first amendment right to free speech by imposing a Gag Order;" "ordered Plaintiff to sue Rule 19 parties when she had no grounds to do so;" "violated Plaintiff's 14th amendment right to due process when he held her in Contempt;" "violated Plaintiff's legal rights by not requiring attorney Oehler's defendants to state

a claim for which relief could be granted…for their affirmative defense of abandonment;" "failed to follow case law for the movant on abandonment to join Rule 19 parties;" "[violated] Rule 91 failure to respond to Plaintiff's action for him to tell her what grounds he expected her to sue the Rule 19 parties for;" and "[violated] his Arizona Constitutional duty to respond to actions, motions, etc. within 60 days" (*id.* at ¶¶ 13–14, 31–32, 47–48);

- Defendant Judge Derek Carlisle "ordered Plaintiff to pay attorney fees for a Motion to Compel her to sign a Written Agreement that violated the terms of the mediated Settlement Agreement" (*id.* at ¶ 15);
- Defendant Judge John Napper "condemned the Plaintiff without evidence for dismissal of eight defendants;" and "should have required attorney Elias to produce the Order issued by Judge Jantzen prior to December 27, 2021" (*id.* at ¶¶ 37, 39);
- Defendant Judge Steven Moss "is a defendant for the impropriety of assigning Judge Nielson to the 2018 case…and had recused himself for the Change of Venue assignment to Yavapai County" (*id.* at ¶ 50);
- Defendant Mohave County "discriminates on where to publish hearings in the region affected that violates Statute §39-204 (C)(3);" "deprived Plaintiff of Notice in the Mohave Daily News for Res. 2016-04;" "did not require a permit from Plaintiff's adjacent neighbor who had…extended the height of the cement block side yard return;" and is liable "as the Respondeat Superior for their attorney's behaviors" (*id.* at ¶¶ 18, 22, 43);
- Defendant Christine Ballard "participated in zoning fraud <u>in 1998</u> claiming Parcel VV was Agricultural land that led to Plaintiff's Tract 4163 Real Property damage" (*id.* at ¶ 19);
- Defendant Nick Hont "approved the misappropriation of General Fund tax dollars expended for Developer Azarmi's proposal to reduce setbacks in Plaintiff's entire Desert Lakes Subdivision Tract 4076 with Res. 2016-125"

and "claimed the permit issued to Plaintiff's adjacent neighbor, Chase, for his personal use…was sound and no permit was required" (*id.* at ¶¶ 20–21);

- Defendant Steven Moss, acting as County Supervisor, "claimed Plaintiff needed to prove ownership with a Survey that cost her $1400;" "claimed the 'Leaning Tower of Pisa is still standing;'" and "recommended Attorney Lenkowsky who was later found to be in collusion with the adjacent neighbor's defense counsel Oehler" (*id.* at ¶¶ 24, 27–28); and

- Defendants Jeffrey Haws and Ryan Esplin "are charged with claiming time-barring with no evidence" and "claim Ord. 37.C.4 circumvents Res. 93-122 in defiance of the language in the Board of Supervisor's dismissal of Res. 2016-125" (*id.* at ¶¶ 42, 45).

Due to these alleged wrongs, Plaintiff is seeking the reversal of multiple state court decisions, declaratory relief, money damages, and punitive damages. (*See id.* at ¶¶ 51–70).

## II. Defendants' Motions to Dismiss

Defendants[2] have each moved to dismiss Plaintiff's First Amended Complaint ("FAC") on the grounds that the Court lacks subject matter jurisdiction over this case and that Plaintiff has failed to state a claim for relief. (*See* Docs. 40, 42).

### A. Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges the subject matter jurisdiction of the court. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039–40 (9th Cir. 2003). A jurisdictional attack can be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Facial attacks assert that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* With a factual attack, a court may review evidence beyond the complaint without converting the motion into one for summary judgment, and it "need not presume the truthfulness of the plaintiffs' allegations." *White*

---

[2] References to "Defendants," without further specification, mean both the County and State Defendants.

- 4 -

*v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). The plaintiff must show that the court in question has jurisdiction to hear their case. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A court must dismiss a plaintiff's complaint if it fails to establish subject matter jurisdiction. *Savage*, 343 F.3d at 1039 n.2.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). Complaints must make a short and plain statement showing that the pleader is entitled to relief for its claims. Fed. R. Civ. P. 8(a)(2). This standard does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Dismissal of a complaint for failure to state a claim may be based on either the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In reviewing a motion to dismiss, courts will "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not required "to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

**B. Discussion**

As an initial matter, State Defendants ask the Court to take judicial notice of

1  pertinent filings from Plaintiff's related state court proceedings. (*See* Doc. 42-1 at 3–6).
2  The supporting Declaration verifies that the documents are not subject to reasonable
3  dispute as they are part of official court records. (*Id.* at 5–6; *see also* Docs. 42-1–3
4  ("Attachments 1–15")).  It is appropriate for this Court to take judicial notice of State
5  Defendants' Attachments because "federal courts may take judicial notice of other courts'
6  proceedings, within the federal judiciary and without, if the proceedings directly relate to
7  matters before the court." *Hayes v. Woodford*, 444 F. Supp. 2d 1127, 1137 (S.D. Cal.
8  2006), *aff'd*, 276 Fed. Appx. 576 (9th Cir. 2008) (unpublished).  Additionally, State
9  Defendants have raised a factual attack under Rule 12(b)(1), so the Court may evaluate
10 matters beyond the FAC. *See Safe Air*, 373 F.3d at 1039.

      **1. The *Rooker-Feldman* Doctrine**

12       Defendants first argue that Plaintiff's claims are barred by the *Rooker-Feldman*
13 doctrine because they are nothing more than attempts to reverse various state court
14 judgments. (Doc. 40 at 4–5; Doc. 42 at 7–9). The Court agrees.

15       Under the *Rooker-Feldman* doctrine, "a federal district court does not have subject
16 matter jurisdiction to hear a direct appeal from the final judgment of a state court." *Noel*
17 *v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). "If a plaintiff brings a de facto appeal from
18 a state court judgment, *Rooker-Feldman* requires that the district court dismiss the suit for
19 lack of subject matter jurisdiction." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th
20 Cir. 2004). *Rooker-Feldman* applies when a federal plaintiff claims the state court's legal
21 errors as their injury and seeks relief from a state court judgment as their remedy. *Id.* at
22 1140.

23       Here, Plaintiff's requested relief primarily concerns prior state court actions and
24 orders. (*See* Doc. 12 at ¶¶ 51–70). For example, Plaintiff requests that the Court declare
25 that an attorney fees award is a "Void Order" and "[d]eclare that all defendant judges
26 named in this case abused discretion and/or abused power against the Plaintiff." (*Id.* at
27 ¶¶ 57, 67). These requests, and all similar ones, are clearly barred under *Rooker-Feldman*.
28 In Response, Plaintiff argues that any state court judgment was entered in error. (Doc. 47

- 6 -

at 3). Such claims are clearly precluded by *Rooker-Feldman*. *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007) ("The clearest case for dismissal based on the *Rooker–Feldman* doctrine occurs when 'a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision....'") (quoting *Noel*, 341 F.3d at 1164). To the extent Plaintiff claims error in the state court proceedings, her relief lies in an appeal to a higher state court, not with a federal district court. *Noel*, 341 F.3d at 1154. Because Plaintiff's FAC seeks to reverse or alter rulings in her state court cases, it is dismissed as the Court lacks subject matter jurisdiction to review the state court's decisions.

### 2. *Younger* Abstention

The FAC also references ongoing state judicial proceedings. (*See e.g.*, Doc. 12 at 2 ("CV 2025-00044 was dismissed that is being Appealed for multiple errors of assumption by Hon. Senior Commissioner Campagnolo.")). Based on this allegation, County Defendants argue that the Court should apply *Younger* abstention. (Doc. 40 at 5–6). Plaintiff does not respond to this argument. (*See* Doc. 47).

*Younger* abstention is based on a strong policy against federal courts interfering with pending state judicial proceedings. *See Yelp Inc. v. Paxton*, 137 F.4th 944, 950 (9th Cir. 2025). In civil cases, "*Younger* abstention is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *ReadyLink Healthcare, Inc. v. State Compen. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014).

All four circumstances are present here. First, Plaintiff identifies two state court cases in her FAC—CV 2018 04003 and CV 2025 00044—and indicates that at least CV 2025-00044 is ongoing. (*Id.*). *Nichols v. Brown*, 945 F. Supp. 2d 1079, 1097 (C.D. Cal. 2013) ("[A] state proceeding is deemed "pending" for the purposes of *Younger* abstention until state appellate remedies are exhausted.").

Second, Plaintiff's state court actions involve the state's interest in enforcing the

orders and judgments. From what can be discerned, Plaintiff's underlying state court claims involved issues of state law, and the decisions or orders rendered, in those cases, applied state statutes and procedures. (*See*, *e.g.*, Doc. 12 at ¶¶ 18–25 (discussing various state laws or local zoning ordinances); *id.* at ¶ 30 (discussing "Vexatious Litigant proceedings"); *id.* at ¶¶ 32–34 (discussing state court judge's application of Ariz. R. Civ. P. 19)). Based on the FAC, a final judgment was reached in CV 2025-00044 and is now on appeal. (*Id.* at 2). Consequently, "[a]ny relief that could be granted by the district court would directly impact [the state's] interest in protecting the authority of its judicial system, as the relief would necessarily be predicated on a determination that [the state judge's] ruling was wrongly decided." *Gray v. Pagano*, 287 Fed. Appx. 155, 157 (3d Cir. 2008) (unpublished).

Third, the Court must consider whether an important state interest is implicated. "The importance of the interest is measured by considering its significance broadly, rather than by focusing on the state's interest in the resolution of an individual case." *Baffert v. California Horse Racing Bd.*, 332 F.3d 613, 618 (9th Cir. 2003). Although the FAC is hard to follow, Plaintiff asks the Court to nullify state court orders, including orders declaring Plaintiff a vexatious litigant, holding Plaintiff in contempt, and assessing attorney fees against Plaintiff. "A State's interest in the contempt process, through which it vindicates the regular operation of its judicial system…is surely an important interest." *Juidice v. Vail*, 430 U.S. 327, 335 (1977). Moreover, Plaintiff asks the Court to reverse the same judgments that are currently on appeal. When "the relief sought in this case would so clearly interfere with the pending state court action," such a consequence "outweighs the impact of any alleged governmental actions in connection with the application of the zoning and land use laws." *Endeavor House, Inc. v. City of South Amboy*, 2006 WL 1791213, *4 (D. N.J. 2006). Given the state's interest in the administration of state court dockets and maintaining its judicial system's authority, the third factor has been met.

Fourth, nothing precludes Plaintiff from raising federal challenges in her state proceedings.

Plaintiff has not alleged or argued that any exception to *Younger* abstention applies here. Therefore, the Court will also abstain from interfering in Plaintiff's ongoing state proceedings under *Younger* principles.

### 3. Eleventh Amendment and Judicial Immunity

State Defendants argue that because Plaintiff sued state judges in their official capacities for actions taken as Arizona Superior Court agents both Eleventh Amendment and judicial immunity bar Plaintiff's claims. (Doc. 42 at 9–13). Plaintiff does not specifically address State Defendants' immunity arguments. (*See generally* Doc. 47). The Court finds that the individual State Defendants enjoy immunity as superior court judges

"[A] federal court generally may not hear a suit brought by any person against a nonconsenting State." *Munoz v. Super. Ct. of Los Angeles Cnty.*, 91 F.4th 977, 980 (9th Cir. 2024). This prohibition, under the Eleventh Amendment, applies when the state or an arm of the state is a named defendant. *Id.* Here, Plaintiff has brought suit against five Arizona Superior Court judges for the decisions they rendered in their official capacities. (*See*, *e.g.*, ¶¶ 57–61). The State has not consented to be sued in federal court, and no exception to Eleventh Amendment immunity applies to these circumstances. In consequence, "Plaintiff cannot state a claim against [Arizona Superior Courts] (or its employees), because such suits are barred by the Eleventh Amendment." *Simmons v. Sacramento Cnty. Super. Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003).

Furthermore, "[a]bsolute immunity is generally accorded to judges and prosecutors functioning in their official capacities." *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). "Judicial immunity applies 'however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff.'" *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985)). However, a judge lacks immunity when they act absent any jurisdiction or perform a non-judicial act. *See id.*

State Defendants argue that the complained actions by the judges were all judicial acts taken in their official capacities and provide the relevant court records from Plaintiff's

- 9 -

state court proceedings. (*See* Doc. 42 at 12–13). The State Defendants' alleged actions, such as dismissing cases, transferring cases, awarding attorney fees, are normal judicial functions. *See Lund v. Cowan*, 5 F.4th 964, 971 (9th Cir. 2021). Even construing the FAC favorably to Plaintiff, allegations of improper motives or constitutional rights violations do not defeat judicial immunity. *See Ashelman*, 793 F.2d at 1078; *Stump v. Sparkman*, 435 U.S. 349, 359 (1978). Finally, the Arizona Superior Courts are courts of general jurisdiction, *State ex rel. Neely v. Brown*, 864 P.2d 1038, 1040 (Ariz. 1993), and the Arizona Constitution imparts original jurisdiction in the superior courts to hear the claims brought by Plaintiff. *See* Ariz. Const. art. VI § 14(2-3). Thus, the State Defendants acted within their jurisdiction, and any remaining claims against the State Defendants are barred by judicial immunity in addition to Eleventh Amendment immunity. All claims against the State Defendants are dismissed with prejudice.

### 4. Failure to State a Claim

To the extent any of Plaintiff's claims are not barred under *Rooker-Feldman*, *Younger* and/or by judicial immunity or Eleventh Amendment immunity, the Court agrees with County Defendants that Plaintiff's claims fail under Rule 12(b)(6). (Doc. 40 at 7).

Any remaining claims that Plaintiff intended to bring that are not already dismissed by the foregoing conclusions are not adequately pled. First, the FAC fails to identify claims or allege any elements of a particular claim. The constitutional violations alleged are mainly in reference to the Defendant Judges and are therefore barred as stated. Otherwise, throughout the FAC, Plaintiff mentions "zoning fraud" (*id.* at ¶¶ 19, 49); suffering stress (*id.* at ¶ 21, 29); "defamation" (*id.* at ¶ 30); "breach of professional duty" (*id.* at ¶ 42); "malicious concealment" (*id.*); the Arizona Tort Claims Act (*id.* at ¶ 43); and "U.S. Title 42, Section 1983" (*id.* at ¶ 46). However, claims for any such violation or under the mentioned authority are not clearly alleged.

For example, Plaintiff states that Defendant Ballard participated in "zoning fraud" and that the "[f]raud produced stress," but she does not establish vital elements of a fraud claim under Arizona law, such as the statement's falsity or her reliance on it. (*Id.* at 19).

*See Enyart v. Transamerica Ins. Co.*, 985 P.2d 556, 562 (Ariz. Ct. App. 1998) (listing a fraud claim's elements under Arizona law).  On certain subjects understood to raise a high risk of abusive litigation, a plaintiff must state factual allegations with greater particularity than Rule 8 requires.  *Twombly*, 550 U.S. at 569 (citing Fed. Rules Civ. Proc. 9(b)-(c)). Plaintiff's allegations fall far below this standard.

      Plaintiff's other potential tort claims fail for the same reasons.  For example, Plaintiff references "discrimination" and a "civil rights violation" but fails to allege protected class membership or any other element of a discrimination claim.  (*Id.* at 2). Moreover, Plaintiff fails to allege a deprivation of constitutional rights, other than her conclusory claims about the State Defendants, and therefore she does not state a claim under 42 U.S.C. § 1983.  *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (stating the required elements of a § 1983 claim).

      Plaintiff's claims against Mohave County are insufficient under § 1983.  *Id.* ("A municipality may not be sued under § 1983 solely because an injury was inflicted by its employees or agents[.]").  Plaintiff does not establish a *Monell* claim against the County because, at best, she claims that the County "discriminates on where to publish hearings" depriving Plaintiff "of Notice in the *Mohave Daily News* for Res. 2016-04" and its attorney committed "malicious concealment."   (Doc. 12 at ¶¶ 18, 42).  However, neither of these allegations, nor any others, constitute a policy, practice, or custom that is the driving force behind a constitutional violation.  *See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).  Likewise, Plaintiff's failure to state a claim against any individual County Defendant precludes any respondeat superior claim against the County.  Finally, Plaintiff does not have a property interest in a "fence permit" and therefore cannot bring a claim that her Fifth Amendment rights were violated.  (*See* Doc. 12 at ¶ 65).

      Even liberally construed and notwithstanding Defendants' arguments for dismissal, Plaintiff's FAC does not provide the Court with sufficient information to identify the missing elements necessary to state any cognizable claim for relief.  As a result, State and County Defendants' Motions to Dismiss (Docs. 40, 42) are granted.

**III.   Motion to Amend**

The Court now turns to Plaintiff's Motions to Amend. Plaintiff first moved for leave to amend the FAC (Doc. 14) and lodged her proposed Second Amended Complaint (Doc. 15). Before receiving a ruling on her Motion for Leave to Amend (Doc. 14), Plaintiff filed another Motion to Amend (Doc. 29) along with a Proposed Amended Second Amended Complaint (Doc. 30). Plaintiff's subsequent Motion to Amend (Doc. 29) moots her first Motion to Amend (Doc. 14). Accordingly, the Court will assess whether to grant Plaintiff leave to file the proposed amendments in Plaintiff's "Proposed Amended Second Amended Complaint" ("SAC") (Doc. 30).

  **A. Proposed Amendments**

The SAC seeks to add attorney Daniel Oehler as a defendant. (Doc. 30 at 1). Plaintiff also proposes the following additional allegations:

- "Inappropriate assignment of this case by Judge Moss" (*id.* at 2);
- "Inappropriate dismissal of Mohave County for the Wrongful Death…awaiting appeals for Judge Napper's denial to amend the Complaint for Wrongful Death" (*id.*)
- "Inappropriate dismissal of Mohave County for Plaintiff's Personal Injury claims" (*id.* at 2–3);
- "Inappropriate dismissal of Daniel Oehler" (*id.* at 3);
- "The [SAC] seeks consolidation of the Class Action Complaint…and consolidation of Plaintiff's Wrongful Death and Personal Injury claims that are pending an Appeal…into this case" (*id.* at 4);
- Jurisdiction over this matter based on "Statute § 12-821 that was codified for the Arizona Tort Act" (*id.*);
- Defendant Ryan Esplin "is charged with fraudulent claims of time-barring…and fraudulently claiming to multiple courts that Plaintiff's land was subject to Res. 93-348 and not for Res. 93-122" (*id.* at ¶ 6);
- Defendant Jeffrey Haws "is charged with…Collusion with attorney

Esplin" (*id.* at ¶ 7);

- Defendant John Napper "erroneously dismissed all of Plaintiff's defendants in CV 2022 00177" (*id.* at ¶ 11); and
- Judge Napper "has cause for a Third-Party countersuit against Elias for Plaintiff's damages" (*id.* at ¶ 39).

The SAC also advocates for leave to amend "for Wrongful Death and Plaintiff's ongoing Personal Injury" as well as "the Class Action Complaint." (*Id.* at ¶¶ 29, 37; *see also id.* at ¶¶ 44, 72–74). The SAC, finally, alleges additional requested relief such as reversing state court orders, adding state appellate judges as defendants, and declaring that the "Arizona Tort Act…does not apply to Real Property damage claims." (*Id.* at ¶¶ 51, 55, 65). Defendants oppose Plaintiff's proposed amendments, arguing that they are futile.

**B. Standard of Review**

Federal Rule of Civil Procedure 15(a) requires that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. Proc. 15(a). The Ninth Circuit has directed that this policy be applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted). A district court may, however, deny leave to amend upon consideration of several factors, including prejudice to the opposing party, bad faith, undue delay, and futility. *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006). Unless there is a strong showing of any of the factors, "there exists a presumption under Rule 15(a) in favor of granting leave to amend." *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 985 (9th Cir. 2011) (citation omitted). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

"A proposed amended complaint is futile if it would be immediately subject to dismissal. Thus, the proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011) (quotations and citations omitted), *aff'd on reh'g en banc on other grounds*, 681

F.3d 1041 (9th Cir. 2012). As previously stated, to survive a Rule 12(b)(6) motion, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**C. Discussion**

Defendants argue that Plaintiff's new allegations suffer from the same defects as the FAC. (*See* Doc. 33). They contend that the Court lacks jurisdiction to consolidate, enjoin, or relitigate state court cases. Defendants also refer back to their Response (Doc. 19) to Plaintiff's first Motion to Amend, which argued that *Younger* abstention applies to Plaintiff's new allegations, (*id.* at 3–4), and further claim that *Rooker-Feldman* bars some of Plaintiff's amendments. (Doc. 33 at 3). Plaintiff does not directly address these arguments. (*See* Doc. 37).

**1. Consolidation of State Court Cases**

In large part, Plaintiff's proposed amendments request to consolidate Plaintiff's "Personal Injury," "Wrongful Death," and "Class Action" cases into this case. (*See*, *e.g.*, Doc. 30 at 2–4, ¶¶ 6, 29, 37, 56–58, 72–74). Defendants argue that the Court lacks the authority to consolidate Plaintiff's terminated or ongoing state court matters here. (Doc. 33 at 3; Doc. 19 at 2). The Court agrees.

"If actions before the court involve a common question of law or fact, the court may…consolidate the actions[.]" Fed. Rule Civ. Proc. 42(a). Rule 42(a) only permits consolidation of cases "*before the court.*" *Id.* (emphasis added). It does not, however, enable the Court to consolidate its federal court case with a case filed in state court, even if there is common parties and subject matter. *See O'Donahue v. Tuugiiboss Trans Inc.*, 2024 WL 1533612, *2 (W.D. Wash. 2024); 9A C. Wright & A. Miller, *Federal Practice and Procedure* § 2382 (3d ed. 2023) ("[A] court may not consolidate an action pending in federal court with an action pending in state court."). So, Plaintiff's allegations regarding the consolidation of her state court cases are futile.

**2. *Younger* and *Rooker-Feldman***

Defendants argue that Plaintiff's amendments are about ongoing or terminated state

court cases, and *Younger* abstention or the *Rooker-Feldman* doctrine applies to the amendments as it does the FAC. (Doc. 19 at 3–4; Doc. 33 at 3). Indeed, Plaintiff's amendments, aside from those requesting consolidation, urge her requests for the Court to relitigate prior state court decisions or effectively enjoin ongoing state appellate proceedings. (*See*, *e.g.*, Doc. 30 at 2–3, ¶ 11). The SAC does not overcome the abstention required by *Younger* or the jurisdictional prohibitions under *Rooker-Feldman*. Rather it expands upon the same allegations and claims that barred her claims in the FAC. *Paramount Pictures Corp. v. Replay TV*, 298 F. Supp. 2d 921, 927 (C.D. Cal. 2004) ("Where a proposed amendment leaves the Court without subject matter jurisdiction to hear the claims presented, it is futile."). Thus, for the same reasons explained above, Plaintiff's amendments are futile as they are subject to either the *Rooker-Feldman* doctrine or *Younger* abstention. *See* Sections I.C.1–2 (dismissing Plaintiff's claims under *Younger* and *Rooker-Feldman*).

Despite Rule 15(a)'s presumption in favor of granting leave to amend, Plaintiff's allegations do nothing more than expand upon the perceived errors in her state court proceedings and ask the Court to improperly relitigate state court proceedings, enjoin pending appellate proceedings, or overturn state court decisions. Plaintiff, additionally, cannot overcome immunity afforded to the State Defendants because she alleges only judicial acts. The amendments also fail to ameliorate the general issues that Plaintiff does not establish the elements of any intended claims. The futility of the proposed amendments precludes the Court from granting leave to amend.

Accordingly,

**IT IS ORDERED** that County Defendants' Motion to Dismiss (Doc. 40) and State Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 42) are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's "Motion for Leave to Amend Complaint for Consolidation of Class Action et. al." (Doc. 29) is **DENIED**.

**IT IS FINALLY ORDERED** that Plaintiff's case is **DISMISSED WITH**

1  **PREJUDICE** and all pending motions (Docs. 14, 22, 23, 24, 25, 32, 45, 50, 53) are **DENIED AS MOOT**. The Clerk of Court is directed to terminate this matter.

Dated this 21st day of October, 2025.

_____
Honorable Diane J. Humetewa
United States District Judge